IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDALL BYRD FERGUSON,<br><br>　　　　Petitioner,<br><br>　v.<br><br>ARNOLD SCHWARZENEGGER *et al.*,<br><br>　　　　Respondents.　　　　　　/ | No. C 04-02565 SI<br><br>**ORDER DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS; REQUESTING SUPPLEMENTAL BRIEFING** |

　　　　On January 18, 2001, after a trial in Monterey County Superior Court, a jury found petitioner Randall Byrd Ferguson guilty of one count of transporting cocaine base (Cal. Health & Safety Code § 11352 ), one count of resisting arrest, and two counts of possession of cocaine base (Cal. Health & Safety Code § 11350). *See* Answer, Ex. D at 1; Petition at 2.

　　　　On June 25, 2004, petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner raises four claims: (1) California Health & Safety Code § 11352 violates principles of equal protection by punishing one who possesses a small quantity of methamphetamine while moving more severely than a stationary possessor; (2) California Health & Safety Code § 11352 violates petitioner's due process rights because the code is overbroad or vague; (3) petitioner was denied due process and a fair trial because the trial court failed to *sua sponte* instruct the jury on the "technical" meaning of the term "transport"; and (4) petitioner was denied his Sixth and Fourteenth Amendment rights when the court denied his request for a continuance in order to retain counsel of his choice for sentencing. The parties agree that petitioner has exhausted his state court remedies.

　　　　After carefully reviewing the parties' briefs and the record, the Court hereby DENIES IN PART the petition for the reasons discussed below, and directs the parties to file supplemental briefs by **August 31, 2006**.

**BACKGROUND**

The California Court of Appeal summarized the facts of this case as follows:

On February 11, 2000, based upon information that defendant was trafficking in narcotics, Monterey Police Officer Sonne observed defendant "milling in and around" his own Mercedes and a Honda and Mazda parked in the driveway of the residence of defendant's sister. While under observation, defendant entered his car and drove in a "counter-surveillance" manner typical of narcotics dealers, namely, by using an indirect path, to the Seaside Shopping Center. He parked in front of Carl's Jr., left his car running and went inside the restaurant.

When defendant left the restaurant, a sergeant detained him until Officer Ballard arrived to conduct a probation search. Ballard recovered two sets of keys and a pager from defendant's pants before [petitioner] fled on foot. After running approximately 160 feet, defendant was apprehended again; he continued to struggle with the officers during the rest of the search. The resumed search revealed that defendant was carrying a wet white napkin containing 5.5 grams of damp cocaine base, a piece of a brown paper bag that contained 3.4 grams of damp cocaine base, and $45 in food stamps. The officers recovered a cellular telephone from defendant's car. Defendant's pager, which went off constantly during the encounter, had over 15 numbers stored, most with codes.

The officers returned to the residence where defendant was first seen and searched the two cars in the driveway for which defendant had the operating keys. The search of the Honda yielded a glove containing 30.83 grams of damp cocaine base, a bag containing 13 grams of marijuana, food stamps of the same number sequence as those found on defendant, and a Pyrex beaker that contained cocaine residue. The search of the Mazda yielded a bag concealed in the car's rear hatch and a Framm oil filter box; the bag and each contained jewelry and watches. A white plastic bag in the Mazda contained smaller clear plastic baggies.

From defendant's bedroom at his residence police recovered a running balance or "pay/owe" sheets. When defendant was booked at the jail, he was in possession of $179 in cash.

After qualifying as an expert, Officer Ballard testified that, in his opinion, the cocaine base recovered was possessed for purposes of sale. He based his opinion upon several facts, including that the drug was kept in separate containers in separate areas of defendant's clothing, the pager activity, the presence of jewelry that could be exchanged for drugs. Ballard also gave his opinion that defendant was involved in the manufacture of cocaine base. He based this opinion upon the presence of the majority of implements necessary for the manufacturing process, the presence of water and residue in the beaker, and the damp quality of the packaging. Ballard noted that it is possible to complete the manufacturing process in a matter of minutes.

Answer, Ex. D at 2-3. Petitioner was sentenced to four years for the transport count and two concurrent sentences of two years each for each of the two possession counts. *Id.*

Petitioner appealed to the California Court of Appeal. On April 23, 2003, the California Court of Appeal affirmed in part, struck one possession count, and modified petitioner's sentence by deleting

the corresponding two-year concurrent term. Answer, Ex. D. The California Supreme Court denied the petition for review on June 25, 2003. Answer, Ex. E.

## STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus if the

> adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision is contrary to established law if it applies a rule that contradicts the law as set forth by the Supreme Court, or arrives at a different result in a case that is "materially indistinguishable" from a Supreme Court decision. *Penry v. Johnson*, 532 U.S. 782, 792 (2001). Unreasonable application of established law occurs when the court "correctly identifies the governing legal rule but applies it unreasonably to the facts." *Id.*[1] Under AEDPA, although Supreme Court precedent is the only controlling authority, Ninth Circuit case law is persuasive authority for the purposes of review of previous state court decisions. *See Luna v. Cambra*, 306 F.3d 954, 960 (9th Cir. 2002), *amended by* 311 F.3d 928 (9th Cir. 2002).

In reviewing a habeas corpus petition, a federal court must look at the last reasoned decision of the state court to determine whether that court's decision was contrary to or an unreasonable application

---

[1] Petitioner suggests that this Court's review is *de novo* because the state court did not cite federal law in its discussion of petitioner's claims. The Supreme Court has rejected a similar argument:

> A state-court decision is "contrary to" our clearly established precedents if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." *Williams v. Taylor*, 529 U.S. 362, 405-406, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Avoiding these pitfalls does not require citation of our cases– indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.

*Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). Relatedly, to the extent that petitioner contends that the state court's decision is *per se* unreasonable because the court did not cite federal law, that contention also lacks merit. *See id.*

3

of established federal law. *Id.* at 960-61. Here, the last reasoned decision of the state court is the decision issued by the California Court of Appeal.

## DISCUSSION

### 1. Equal Protection

Petitioner contends that his Equal Protection rights were violated because the punishment for transporting an illegal drug is more severe than the punishment for simple possession.[2] Petitioner contends that while there are legitimate reasons to punish drug trafficking more harshly than drug possession, there is no rational basis for imposing a greater punishment on someone who is transporting illegal drugs for personal use.

The California Court of Appeal rejected this claim on several grounds. The court first concluded that persons convicted of possessing cocaine base and those convicted of transporting the same substance are not "similarly situated with respect to the legitimate purpose of the law for equal protection purposes since they have not committed intrinsically the same quality of offense." Ex. D at 4 (internal citation and quotations omitted). The court further held:

> [A]s explained in *Rogers*, "the Legislature was entitled to assume that the potential for harm to others is generally greater when narcotics are being transported from place to place, rather than merely held at one location. The Legislature may have concluded that the potential for increased traffic in narcotics justified more severe penalties for transportation than for mere possession . . . . Moreover, a more severe penalty for those who transport drugs may have been deemed appropriate to inhibit the frequency of their own personal use and to restrict their access to sources of supply, or to deter the use of drugs in vehicles in order to reduce traffic hazards and accidents, as well as to deter occurrences of sales or distributions to others." (*Rogers*, 5 Cal.3d at ¶. 136-137.)
>
> The statutes punishing transportation of controlled substances serve a separate legitimate purpose than those punishing simple possession, and our state Supreme Court has held that the Legislature was entitled to assume the potential for harm to others rises dramatically when controlled substances are not merely possessed but are transported from place to place. Accordingly, even assuming those who possess controlled substances and those who transport them are similarly situated for the purposes of an equal protection analysis, our Supreme Court has impliedly found that there is a reasonably compelling state interest for the harsher punishment imposed for transporting controlled substances. (*Rogers, supra*, 5 Cal.3d at p. 137 ["greater penalties may

---

[2] Under California Health & Safety Code § 11352, a defendant convicted of transporting a designated drug faces a prison sentence of between three and five years. If convicted of only drug possession under California Health & Safety Code § 11350, the prison term can be no more than three years.

4

legitimately be imposed to curtail" the opportunities for "the personal use and acquisition of drugs"]; see generally, *People v. Olivas* (1976) 17 Cal.3d 236.)

*Id.* at 5.

The Court concludes that the California Court of Appeal decision is not contrary to nor an unreasonable application of established federal law. In order to establish an Equal Protection violation, petitioner must demonstrate that he "'has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).[3] The Supreme Court has articulated rational basis review as follows:

> In general, the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification, the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker, and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational

*Nordlinger v. Hahn*, 505 U.S. 1, 11 (1992) (citations omitted).

Here, even assuming that a person who possesses illegal drugs and a person who transports illegal drugs are similarly situated, the California Court of Appeal correctly held that there are numerous legitimate state interests in punishing transportation of illegal drugs more harshly than mere possession of illegal drugs, including inhibiting the frequency of drug use, deterring the use of drugs in vehicles in order to reduce traffic hazards and accidents, and deterring the occurrences of sales or distributions to others. The Court is not persuaded by petitioner's arguments that these goals are so attenuated from the classification so as to render the distinction arbitrary. To the contrary, as the California Supreme Court noted in *People v. Rogers*, "[t]he relative privacy and increased mobility afforded by the automobile offers expanded opportunities for the personal use and acquisition of drugs; greater penalties may legitimately be imposed to curtail those opportunities." 5 Cal. 3d 129, 137 (1971).

**2.    Overbreadth and Vagueness Challenges to "Transport"**

Before the California Court of Appeal, petitioner contended that the word "transport" as used in the Health & Safety Code was not intended to encompass the incidental movement of a small amount of controlled substance compatible with possession for personal use. The California Court of Appeal

---

[3] Petitioner does not dispute that the rational basis standard applies.

5

rejected this argument, holding that "[c]ontrolling state Supreme Court authority has held that the Legislature intended its statutes punishing 'transportation' of controlled substances to include transportation of controlled substances, no matter what quantity [was] involved." Answer, Ex. D at 3 (*citing People v. Rogers*, 5 Cal. 3d 129 (1971)).

Petitioner's habeas petition contends that the California Court of Appeal's interpretation of "transport" is unconstitutionally overbroad and vague, and therefore violates petitioner's due process rights because it "includes within its reach even the incidental transportation of a controlled substance, no matter what quantity was involved and regardless of the factor of facilitating the sale or distribution of the contraband." Traverse at 17.

The Court concludes that petitioner's challenges are without merit. Although petitioner frames these claims in terms of "overbreadth" and "vagueness," what petitioner is really challenging is the California Supreme Court's interpretation of "transport" in *People v. Rogers*, 5 Cal. 3d 129 (1971).[4] In *Rogers*, the California Supreme Court held, *inter alia*, that the offense of illegal "transportation" of drugs did not require a specific intent to transport contraband for the purpose of sale or distribution *Id.* at 134. The court explained:

> Neither the word "transport," the defining terms "carry," "convey," or "conceal," nor section 11531 read in its entirety, suggests that the offense is limited to a particular purpose or purposes.
>
> It should be noted that section 11531 not only prohibits transporting marijuana, but also importing, selling, furnishing, administering, or giving it away. The prohibitions are in the disjunctive – not the conjunctive – and nothing in that section exempts transportation (or importation) of marijuana for personal use. Had the Legislature sought to restrict the offense of transportation to situations involving sale or distribution, it could easily have so provided. For example, section 11530.5, enacted in 1961, provides that "Every person who *possesses for sale* any marijuana except as otherwise provided by law shall be punished" as specified. (Italics added; see also § 11500.5.)
>
> Thus, the courts of this state have consistently applied section 11531 and similar sections to situations involving the knowing conveyance of narcotics or drugs in a moving vehicle, whether or not the evidence disclosed that the contraband was intended for sale or distribution.

*Id.* at 134-35.

---

[4] Indeed, petitioner's petition for review to the California Supreme Court recognized this fact; that petitioner requested that the court "reconsider the applicability of *Rogers*" and contended that "this Court's plurality decision in *Rogers* was wrongly decided . . . ." Answer, Ex. D at 10-11 of petitioner's petition for review to the California Supreme Court.

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Petitioner may not "transform a state law issue into a federal one merely by asserting a violation of the due process clause." *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996). Here, petitioner has not raised true overbreadth or vagueness challenges[5]; instead, petitioner simply argues that *Rogers* was wrongly decided, and that the California Legislature only intended to punish transportation of illegal substances in connection with drug trafficking. These claims are not cognizable in a federal habeas petition.

### 3. Failure to sua sponte instruct the jury

Petitioner claims that he was denied due process under *Hicks v. Oklahoma*, 44 7 U.S. 343 (1980), because the trial court did not instruct the jury, *sua sponte*, that "transport" had a "technical" meaning. Petitioner contends that the trial court should have supplemented the definition of the term "transport" with an element that includes a "factor of facilitating the sale or distribution of the contraband." Traverse at 30. Petitioner concedes that defense counsel did not contemporaneously object to the jury instruction in question.

The California Court of Appeal addressed petitioner's arguments on the merits, but also clearly and expressly held that the issue was waived because defense counsel consented to the trial court's handling of the issue:

> At trial, defense counsel agreed that the jury should be instructed pursuant to CALJIC No. 12.02. Accordingly, the jury was instructed with a near verbatim version of CALJIC No. 12.02, as follows: "Every person who transports cocaine base, a controlled substance, is guilty of a violation of Health and Safety Code section 11352, a crime. In order to prove this crime each of the following elements must be proved: 1. The defendant transported cocaine base, a controlled substance; and, 2. The defendant knew of its presence and nature as a controlled substance."
>
> The record suggests that the trial court afforded both counsel ample opportunity to make suggestions or request modifications to the proposed instructions. The jury was properly instructed pursuant to CALJIC No. 12.02 pursuant to the consent of both parties; by

---

[5] *Cf. Melugin v. Hames*, 38 F.3d 1478 (9th Cir. 1994) (discussing overbreadth and vagueness doctrines in federal habeas petition where petitioner convicted for making "threats").

7

>failing to request an instruction further defining or clarifying the meaning of "transport," defendant has waived this issue for the purposes of appeal.

Answer, Ex. D at 6 (citing *People v. Hardy*, 2 Cal. 4th 86, 153 (1992); *People v. Barrillas*, 49 Cal. App. 4th 1012, 1023 (1996).

Citing *Paulino v. Castro*, 371 F.3d 1083 (9th Cir. 2004), respondent contends that petitioner's claim is procedurally barred. The Court agrees. In *Paulino*, the Ninth Circuit addressed a virtually identical situation in which a petitioner argued his due process rights were violated because the trial court did not *sua sponte* clarify for the jury the definition of "major participant." *Id.* at 1092. The California Court of Appeal rejected the petitioner's claim both on the merits and on the ground that the claim had been waived because defense counsel did not object to the jury instruction at trial. *Id.* The Ninth Circuit held that federal court review of the claim was barred by independent and adequate state grounds. *Id.* at 1093.

Petitioner attempts to avoid procedural default by asserting that California's contemporaneous objection rule is unclear, inconsistently applied or not well-established. However, aside from simply asserting that this is the case, petitioner does not make any showing that this exception to procedural default applies here. Indeed, Ninth Circuit case law strongly suggests that California's contemporaneous objection rule is consistently applied when a party fails to make any objection. *See Melendez v. Pliler*, 288 F.3d 1120, 1126 (9th Cir. 2002) ("We held more than twenty years ago that the rule is consistently applied when a party has failed to make *any* objection to the admission of evidence," *citing Garrison v. McCarthy*, 653 F.2d 374, 377 (9th Cir. 1981)).

Petitioner does not suggest that there was cause for the procedural default, or that a miscarriage of justice would result absent the Court's review. *See Coleman v. Thompson*, 501 U.S. 722, 748 (1991); *Paulino*, 371 F.3d at 1093. Accordingly, the Court concludes that petitioner is barred from receiving habeas corpus relief on this claim under the independent and adequate state ground doctrine. *See id.*

The Court further concludes that even if petitioner's claim was not procedurally barred, the claim would fail on the merits. The California Court of Appeal held that the trial court did not have a *sua sponte* duty to define "transport" because it is a commonly used term. *See* Answer, Ex. D at 6. The Court agrees. *See People v. Cortez*, 166 Cal. App. 3d 994, 999 (1985) ("the term 'transports' is a term

8

commonly understood by jurors and that the word has not acquired a technical legal definition which would require the trial court to instruct the jury *sua sponte* as to its meaning."). Further, as the California Court of Appeal noted, petitioner conceded that he could have been convicted of "transporting" cocaine base if the jury found that he had it with him in the car when he drove from his sister's house to Carl's Jr. *See* Answer, Ex. D at 6. The court held that nothing in the record suggested that the jury was confused about which of petitioner's actions (driving the car or running from the police) constituted "transportation," and that the prosecutor's sole argument regarding the transportation charge was that petitioner transported the cocaine base when he drove from the residence to the shopping center. *Id.* at 7.

More importantly, the "technical" definition advanced by petitioner – one that requires the factor of facilitating the sale or distribution of contraband – has been flatly and repeatedly rejected by the California courts. In *People v. Emmal*, 68 Cal. App. 4th 1313 (1998), a case cited by petitioner, the court held that driving a car 20 feet constituted "transportation" within the meaning of Health & Safety Code Section 11379, a code section analogous to Section 11352. *See Emmal*, 68 Cal. App. 4th at 1315. The *Emmal* court specifically rejected the argument advanced by petitioner that "transport" or "transportation" requires a nexus with the sale or distribution of contraband:

> The Legislature has determined transportation of controlled substances – no matter what quantity is involved – should be prohibited because it poses greater risks to the public than simple possession does. . . . The proscription and the penalty that goes with it *do not require an actual sale*, an impaired driver, or even use of the drug before they come into play. It is enough that those evils, along with their attendant risks, have been reasonably associated with the prohibited deed.

*Id.* at 1316-17 (emphasis added); *see also Rogers*, 5 Cal. 3d at 134-35.

**4.     Denial of request for continuance to substitute counsel at sentencing**

Finally, petitioner contends that the trial court violated his rights under the Sixth and Fourteenth Amendments when it denied his request for a continuance to substitute counsel on the day of his sentencing.

To assist the Court's review of this claim, the Court directs the parties to submit supplemental briefs of no more than 10 pages addressing (1) whether petitioner has completed his sentence, and if not, how much time remains on his sentence; and (2) if petitioner has completed his sentence, whether

9

petitioner's claim concerning the denial of substitute counsel for sentencing is moot, in light of the fact that petitioner only requested new counsel for sentencing, and did not request new counsel prior to or during the trial. **The supplemental briefs shall be filed simultaneously no later than August 31, 2006**.

## CONCLUSION

For the foregoing reasons and good cause shown, the Court DENIES IN PART petitioner's petition for writ of habeas corpus. (Docket No. 1). The Court shall address petitioner's claim regarding the trial court's denial of his request for a continuance to obtain new counsel for sentencing after receipt of the parties' supplemental briefs.

**IT IS SO ORDERED.**

Dated: August 9, 2006

SUSAN ILLSTON
United States District Judge